GILBERT et al. v. HOPKINS et al.

(Circuit Court of Appeals, Fourth Circuit. March 11, 1913.)

No. 1,098.

1. PARTITION (§ 34*)—NATURE OF PROCEEDING.
    Under the equitable practice prevailing in the courts of the United States, a proceeding in partition is equitable in its nature, administered under the rules applicable to a bill in equity for partition.
    [Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 88, 90; Dec. Dig. § 34.*]

2. PARTITION (§ 17*)—ISSUES—DENIAL OF PLAINTIFFS' POSSESSION OR INTEREST—TRIAL AT LAW.
    Where defendants, in a suit in equity for partition, denied plaintiffs' possession of any interest in the land, and claimed sole title and seisin, they were entitled to a trial of that issue at law.
    [Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 53–59; Dec. Dig. § 17.*]

3. PARTITION (§ 17*)—TITLE—LEGAL ISSUES—TRIAL AT LAW—EFFECT OF VERDICT.
    Where, in partition, defendant claimed sole title and seisin, but denied that plaintiffs had any interest in the land, and the court thereupon

directed a trial of that issue at law, the verdict therein was not merely for the enlightenment of the chancellor's conscience, but was determinative of the legal issue, leaving only the remaining equitable matter involved for trial before the chancellor.

[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 53–59; Dec. Dig. § 17.*]

4. EXECUTORS AND ADMINISTRATORS (§ 388*)—SALE BY ADMINISTRATOR—TITLE OF PURCHASER.

Rights in a tract of land in North Carolina having been transferred to G. and P. as tenants in common, G. conveyed his undivided half interest to P.; but P.'s heirs thereafter reconveyed to G. the same undivided half interest in the land by a deed which recited that no consideration had been paid by their ancestor to G. for the prior conveyance made to him, and thereafter P.'s heirs by silence and acquiescence recognized that G. was the owner of an undivided moiety in the lands. Held, that such reconveyance was not void, but was at most voidable, under Rev. Code N. C. c. 46. § 61, providing that a conveyance of land by the heirs of a deceased debtor within two years after his death, or the appointment of an executor or administrator, shall be void as against creditors, executors, and administrators, etc., and that the record of such deed was sufficient to impart notice to a subsequent purchaser of the land at a sale by P.'s administrator under proceedings to which the heirs of G. were not parties.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1573–1582; Dec. Dig. § 388.*]

5. EXECUTORS AND ADMINISTRATORS (§ 388*)—SALE OF LANDS—PAYMENT OF DEBTS—EFFECT.

Where the heirs of a tenant in common had reconveyed a moiety of the land to the cotenant because the consideration for the original conveyance had not been paid, subsequent proceedings by the administrator to sell their ancestor's land to pay debts passed only the remaining moiety, notwithstanding the administrator's deed, based on the proceedings, purported to convey the full estate in fee of all the lands.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1573–1582; Dec. Dig. § 388.*]

6. ADVERSE POSSESSION (§ 77*)—COLOR OF TITLE.

An administrator's deed, purporting to convey a fee in an entire tract of land, afforded good color of title for an ensuing adverse possession, though the intestate in fact owned only an undivided moiety therein.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 455–457; Dec. Dig. § 77.*]

7. INFANTS (§ 24*)—ADVERSE POSSESSION—SUSPENSION.

Where an administrator of a tenant in common sold for the payment of debts and purported to convey the whole estate, limitations would only begin to run against the heirs of the cotenant for the commencement of the period of adverse possession from the date the youngest attained majority.

[Ed. Note.—For other cases, see Infants, Cent. Dig. § 25; Dec. Dig. § 24.*]

8. EXECUTORS AND ADMINISTRATORS (§ 377*)—CONVEYANCE BY ADMINISTRATOR—RIGHTS OF HEIRS.

Where the heirs of a tenant in common of certain land were of full age in 1871, when proceedings were instituted by the administrator to sell the land to pay debts of the ancestor, and such administrator, acting also as the agent and attorney of the heirs, sold the land for $15,000, and conveyed the same to the purchaser in 1881, and accounted for the proceeds as a part of the estate, such heirs were thereafter estopped to

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

deny the sale by the administrator, or to treat the deed then executed as invalid.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 1543; Dec. Dig. § 377.*]

In Error to the District Court of the United States for the Western District of North Carolina, at Asheville; Jeter C. Pritchard, James E. Boyd, and Henry G. Connor, Judges.

Action at law by A. Louisa M. Gilbert and others, heirs at law of L. W. Gilbert, against W. R. Hopkins and others. Judgment for defendants, and plaintiffs bring error. Reversed.

See, also, 198 Fed. 849, 117 C. C. A. 491; 204 Fed. 204.

James H. Merrimon, of Asheville, N. C., and Marshall W. Bell, of Murphy, N. C. (Thomas S. Rollins and John S. Adams, of Asheville, N. C., on the briefs), for plaintiffs in error.

C. B. Matthews, of Cincinnati, Ohio, and Theodore F. Davidson and Louis M. Bourne, both of Asheville, N. C. (W. B. Councill, of Hickory, N. C., and F. A. Sondley, of Asheville, N. C., on the briefs), for defendants in error.

Before GOFF, Circuit Judge, and DAYTON and·SMITH, District Judges.

SMITH, District Judge. Prior to July 20, 1860, several persons had made entries entitling them to grants of land in Cherokee county, N. C., for about 62,000 acres of land. One Thomas S. Calloway was authorized to sell the rights of the parties having made the entries and on July 20, 1860, he sold these rights to L. W. Gilbert, of New York, and William H. Peet, of New Orleans, in consideration of the payment of a certain sum "already arranged" and in addition "the sum of ten thousand dollars out of the first receipts from sales of any portion of said property without interest." Gilbert and Peet thereupon paid the sum "already arranged," and the grants were issued to them jointly for the land aggregating some 63,000 acres on or about November 3, 1860. March 1, 1861, Lyman W. Gilbert conveyed his undivided one-half interest in the lands so granted to William H. Peet, and the deed of conveyance was recorded in Cherokee county on February 6, 1862. William H. Peet died in 1864, and his lands passed to his heirs at law, Edward J. Peet, Sarah H. P. Sawtelle, and Mary H. P. Bixby, all of whom were of full age when on the 1st of May, 1866, they reconveyed to Lyman W. Gilbert the same undivided one-half interest in the lands which Gilbert had conveyed to William H. Peet on March 1, 1861; this last deed stating that:

"No valid consideration was paid by the said William H. Peet to the said Lyman W. Gilbert for the conveyance made by him as aforesaid."

It does not appear exactly when during the year 1864 William H. Peet died, but it does appear that some time in that year William A. Bartlett, an intimate friend of Peet's, administered upon his estate in Tennessee, and then or later in Louisiana. On December 3, 1867, Wil-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

liam A. Bartlett, as the administrator of the estate of William H. Peet, and as agent and attorney for the heirs at law of Peet, executed a written instrument with Lyman W. Gilbert, which recited that Gilbert and Peet owned jointly some 60,000 acres of land in Cherokee county, and agreed that two persons, viz., J. E. Raht and William S. Calloway, should make an equal and equitable division of the lands between the parties entitled. No division seems ever to have been actually made as intended by this agreement, but Bartlett appears to have acted as attorney for the heirs at law of Peet, and in 1870 retained counsel for the estate of William H. Peet in Cherokee county, N. C., and on the 9th of November, 1870, petitioned the probate court for Cherokee county to be appointed administrator of the estate of William H. Peet, producing and filing an instrument in writing signed by the heirs at law of William H. Peet, dated October 21, 1870, renouncing all claims to administer on the estate of their intestate, and asking that William A. Bartlett be appointed administrator, and thereupon Bartlett was on the 9th of November, 1870, appointed by the probate court for Cherokee county administrator of the estate of William H. Peet. On the 30th of March, 1871, William A. Bartlett filed a proceeding in the probate court of Cherokee county by himself, as administrator of William H. Peet, against Edward J. Peet, George Sawtelle and wife, Sarah H. P. Sawtelle, Solomon Bixby and wife, Mary H. P. Bixby, as heirs at law of William H. Peet, deceased, for leave to sell the lands of the intestate to pay debts, and on proof of the nonresidence of the parties defendant service by publication was ordered; and, no answer or plea having been put in by the defendants, the probate court for Cherokee county on June 5, 1871, made a decree in the cause permitting the administrator to sell the lands of Peet at public or private sale.

Lyman W. Gilbert died in March, 1871, leaving a wife, and two minor children, girls, one born October 27, 1861, and the other December 25, 1862. No will has been proven according to the laws of North Carolina, and therefore on Gilbert's death his interest in the lands descended to his two minor children. Gilbert's death took place about the time that Bartlett filed his petition in the probate court for leave to sell the lands. The record does not disclose whether Gilbert's death was before or after the filing of the summons against the defendants, the heirs at law of Peet; but it does disclose that the petition for the sale of the lands, which sets out that the lands belonged wholly to Peet (in direct contradiction of the agreement with Gilbert of December 3, 1867), was not filed until after the 1st of April, 1871, and therefore after Gilbert's death.

Neither Gilbert nor any of his heirs at law were named as parties to these proceedings, nor was any service made upon any of them. They were all nonresidents of North Carolina. The record does not disclose that any notice of these proceedings was ever brought home to the heirs at law of Gilbert, even if any such general notice would have been effectual to bind them. It does appear that in 1875 Mrs. Gilbert, the widow of Lyman W. Gilbert, had some correspondence both with Bartlett and with F. P. Axley, who was the attorney for and repre-

sented Bartlett in the proceedings in the probate court for leave to sell the lands. These letters disclose no knowledge on the part of Mrs. Gilbert of any proceedings to sell the lands.

. On the contrary, although Bartlett in the petition to sell the lands, filed by Axley for him in April, 1871, alleges that the lands belonged to Peet, without mentioning Gilbert's interest, yet in her letter of March 10, 1875, to Axley Mrs. Gilbert states to Axley that she is informed by Bartlett that Axley, as Bartlett's lawyer, is looking after the North Carolina lands belonging to Peet and Gilbert, and asks for information as to who held the mortgage on the land, and how much was due on it, and in her later letters of June 30 and August 4, 1875, to Mr. Bartlett she still harps upon the theme that she understood there was some immediate and pressing claim on the lands, which must be paid or they would be sold. So far as the record discloses, nothing of the kind existed. The obligation given by Peet and Gilbert in July, 1860, when they acquired the rights to the grants, was for $10,000 to be paid out of the first receipts from sales of the land. This obligation did not mature until the lands were sold, unless before that time some court of competent jurisdiction should have construed this obligation as meaning that the lands must be sold within a reasonable time, and then have fixed that time and decreed that, unless the amount should be paid within that time, the lands should be sold to pay. Nothing of that kind had occurred.

In March, 1869, one Andrew Colvard had commenced proceedings against Gilbert in the superior court of Cherokee county, and the administrator and heirs at law of Peet, on this same $10,000 instrument; but no service of these proceedings appears to have been ever made on Gilbert or his heirs at law, and on August 5, 1870, these proceedings were by order of court dismissed without reaching final decree. In August, 1872, M. C. King, as receiver to collect this same obligation of $10,000, also commenced proceedings in the superior court for Cherokee county against W. A. Bartlett, administrator of W. H. Peet, and Mrs. ———— Gilbert, administrator of Lyman W. Gilbert; but no service was ever made on any heirs at law or representative of Gilbert, nor any appearance entered in their behalf, and the last order made in this cause in the spring of 1875 omits all mention of the Gilberts and appears to deal with Bartlett alone. The record discloses no notice to or knowledge by Mrs. Gilbert or her daughters of any of these proceedings, and shows only on her part in 1875 a belief that there was a pressing mortgage on the property, which appears not to have been the case. In April, 1879, J. J. Colvard, sheriff of Graham county, N. C., made a tax deed for $107.67 for a portion of these lands to J. E. Raht. Whether or not this tax deed was regular and valid does not appear to be material to the present case.

No sale was made by W. A. Bartlett as administrator of W. H. Peet under the order of the probate court made June 5, 1871, for many years. On December 31, 1881, he executed a deed of conveyance to the lands in question to D. W. Belding and others. The consideration stated is $15,000. The deed purports to be made under authority of the order for sale made June 5, 1871, in the proceedings

against the heirs at law of Peet and of another order made July 22, 1881, in the same proceeding confirming the sale and directing the conveyance. The deed purports to convey a full estate in fee simple to the lands. They are not conveyed as a whole as one tract with a general boundary, but each tract covered by each separate grant is separately described and conveyed. The record discloses no notice to the heirs at law of Gilbert of this deed. They were at its date still minors. One arrived at her majority in 1882 and the other in 1883. Inasmuch as the purchasers under this deed by its terms purported to have acquired an absolute estate in fee simple to the lands, it constituted under the law of North Carolina good color of title to the lands, sufficient, if followed by sufficient adverse possession, to ripen into a bar under the statute and constitute statutory title. As against the two Gilberts who were minors at the date of the deed, this adverse possession could begin to run after the time they attained their majorities. The title to the lands, or such title as the purchasers took under the deed of December 31, 1881, with any further rights they may have acquired by any adverse occupation, passed by sundry mesne conveyances to the present defendants on March 3, 1903.

[1, 2] In July, 1904, the present plaintiffs commenced proceedings in the superior court for Cherokee county against the present defendants for partition of the lands; the petition for partition averring that the plaintiffs as heirs at law of Lyman W. Gilbert were entitled to an undivided one-half interest in the lands. These proceedings were by the defendants removed to the Circuit Court of the United States for the Western District of North Carolina, and the defendants appeared and answered, setting up as a defense the claim of sole seisin and the right to the exclusive title and possession of the lands. Under the statutes of North Carolina, the proceeding for a partition of lands is a proceeding at law. Under the equitable practice prevailing in the courts of the United States, a proceeding in partition is an equitable proceeding, administered under the rules applicable to a bill in equity for partition. It was so recognized by the counsel for both sides, for in the three orders made in the cause after removal (one of which was made by consent) the cause is entitled as in equity. Although on its face the bill was one for partition, yet the defendants had not admitted the possession by plaintiffs of any interest in the lands, but had set up the claim of sole title and seisin, and on that defense or issue they were entitled to a trial at law.

The Circuit Court of the United States on July 8, 1909, made an order that inasmuch as the title of the plaintiffs to the land sought to be partitioned was denied in the answer, which interposed the plea of sole seisin, the bill should be retained for 12 months, with liberty to the plaintiff in the meantime to proceed at law touching this alleged title to the lands in question, but, in case they should not proceed at law and to trial within the time mentioned, the bill should stand dismissed unless further time was given by the court, but that no final hearing of the cause should be had until after the trial of the action at law and the final disposition of the same. Thereupon, on August 19, 1909, the plaintiffs filed a complaint upon the law side of the court

against the defendants for the recovery of their one-half interest in the lands. To this complaint the defendants answered, denying any title in plaintiffs and claiming exclusive title and possession in themselves, and also pleaded the statute of limitations by adverse possession, and on the issues so joined the cause went to trial before the court and a jury on the law side of the court.

On the trial below the presiding judge ruled that the defendants were entitled to a verdict, and therefore gave to the jury a peremptory instruction to find that the plaintiffs were not the owners of any interest in the lands in dispute. The question of adverse possession does not seem to have been considered, as from the record it appears that the trial judge took the view that the plaintiffs upon the whole case had established no paper title in themselves to any part of the land in dispute. It is on a writ of error to the judgment of the Circuit Court, based on this ruling, that the cause is now before this court.

[3] The cause in the United States Circuit Court was originally a bill in equity for partition. In that case a defense or issue was set up involving, among others, one question which could only be determined in a court at law. The practice in a court of chancery in such cases has been, whilst retaining the cause for ultimate adjudication, to send the legal questions to a court of law for trial. It is not the referring of an issue of fact to a jury for the enlightenment or assistance of the conscience of the chancellor. In such case the verdict of the jury is advisory, but not binding upon the chancellor. It is the case of sending to the law court for trial of a question which upon the demand of the party can only be tried and determined by or in a trial at law. We so construe the order of the Circuit Court of the 8th of July, 1909. The legal issue was ordered to be determined in a trial at law, and the bill was retained, so as, when that determination was had, any other equitable matter involved in the cause might be determined, upon the basis that the legal issue was to be held and treated as it should be determined in the trial at law. As, for instance, if in the present case the trial at law resulted in favor of the plaintiffs, the court would then proceed with the cause in equity by decreeing the partition upon the basis of the plaintiff's interest as determined in the proceeding at law.

[4] The interest of Gilbert would appear to have been settled as against the Peets by the deed of May 1, 1866, and the succeeding acknowledgments. Taking together the deed of May 1, 1866, the agreement between Bartlett (the attorney of the heirs at law of Peet) and Gilbert of December 3, 1867, the information given by Bartlett to Mrs. Gilbert, the testimony of Axley, and the silence and acquiescence of the heirs at law of Peet, there can be no doubt but that it was entirely understood and admitted by the heirs at law of Peet that Gilbert had a one-half undivided interest in the lands; the heirs at law of Peet having the other undivided moiety. The deed of May 1, 1866, was sufficient under its terms to convey a legal title to Gilbert to this one-half. It was at the most voidable under the statute (Rev. Code N. C. c. 46, § 61), not void, and in any event on the record was sufficient to advise any intending purchaser of Gilbert's interest. The proceedings

in the court of probate for Cherokee county are the only proceedings under which, subsequent to 1866, it can be claimed there was any divesting of the interest held by the Gilberts. To those proceedings the Gilberts were in no wise ever made parties, and they are consequently not bound by them.

[5] At most, under the North Carolina statute they would operate to sell only the interest of Peet in the lands, and his interest was but one moiety. The deed of conveyance of the 31st of December, 1881, by its express terms, was based upon the proceedings in the probate court, and could have at that date no greater force in disposing of Gilbert's interest than those proceedings themselves. Upon the record the court is of the opinion that the Gilberts are shown to have had title to a one-half interest in the lands in dispute on the 31st of December, 1881, and that there is no evidence of any transfer from them by any contractual act of their own, or by the judgment of any court of competent jurisdiction of that interest.

[6, 7] The deed of 31st of December, 1881, did, however, purport to convey the lands in fee simple, and by its terms could constitute good color of title for an ensuing adverse possession. The youngest of the heirs at law of Gilbert attained her majority in 1883. From the date she attained her majority the statute of limitations could begin to run, and the period of adverse occupation could begin to be computed. To whatever portion of the lands the defendants can show adverse occupation under the color of title given by the deed of December 31, 1881, for the statutory period, the title of the Gilberts would be divested, and the defendants would be entitled to recover. This depends upon a question of fact under the issues in the pleadings, and should be submitted to a jury. The court below erred in holding that upon the whole cause the plaintiffs had not shown title to any part of the lands, and in not submitting the issues of adverse possession to a jury, so far as the plaintiffs, heirs at law of Gilbert, are concerned.

[8] The heirs at law of William H. Peet stand in different case. William A. Bartlett was the administrator of the estate of their ancestor. They were all of full age in 1871, when the proceedings to sell the lands of their ancestor were instituted in the probate court for Cherokee county. Bartlett was also their agent and attorney. Axley was retained by Bartlett as their attorney. The $15,000 received by Bartlett in 1881 as the proceeds of sales of the lands was received and paid out and accounted for by him as the administrator of Peet. They must be presumed to have been advised of their own affairs, and to have known that this $15,000 was received and disbursed as part of the estate to which they were entitled, and of the balance which remained, and which presumptively the administrator paid over to them. Under these circumstances they are now estopped to deny the sale of 1881, or to treat the deed there given as invalid.

The judgment is accordingly reversed, and the cause remanded to the District Court of the United States for the Western District of North Carolina for a new trial in accordance with this opinion.

Reversed.