MIDKIFF v. COLTON et al.

(Circuit Court of Appeals, Fourth Circuit. April 19, 1918.)

No. 1421.

1. LOST INSTRUMENTS ☞3—ESTABLISHMENT—JURISDICTION OF EQUITY.
   Court of equity may be invoked by claimant of minerals to establish deed, on which his title depends, lost or destroyed by adversary, to the end that by preserving and recording he may protect himself against bona fide purchaser and show good marketable title.

2. ESTOPPEL ☞29(1)—BY DEED—GRANTEE.
   Though deed was executed, under power of attorney authorizing it in compromise of pending action, after judgment for principals, the grantees accepting and holding under it are estopped to allege its consequent invalidity, against the grantors ratifying it and claiming under reservation therein.

3. MINES AND MINERALS ☞55(1)—CONVEYANCE—ACCEPTANCE—PRESUMPTION.
   There is a strong presumption that deed of land, reserving minerals, executed after grantees had been adjudged to have no interest in land, was accepted; it having conferred benefits on them and been found in the possession of one of them.

4. MINES AND MINERALS ☞55(1)—CONVEYANCE—ACCEPTANCE—EVIDENCE.
   Acceptance of deed, reserving minerals, by grantee having no title, held shown against his claim of adverse possession, notwithstanding his testimony of its receipt with understanding that if accepted it was to be returned to grantor.

5. ADVERSE POSSESSION ☞31—POSSESSION AFTER ADVERSE JUDGMENT.
   After judgment against defendants in ejectment, they could not assert subsequent adverse possession against the plaintiff till notice to him that they were so holding.

6. VENDOR AND PURCHASER ☞244—BONA FIDE PURCHASER—NOTICE—EVIDENCE.
   Claimant of land, as purchaser without notice, free of reservation of minerals in deed to his grantor, held shown put on notice of deed's contents, by testimony of his witness, his grantor and father, that he talked with him about such deed when he purchased.

7. MINES AND MINERALS ☞49—SEVERANCE—ADVERSE POSSESSION.
   A purchaser of land, with notice of severance of minerals and surface by deed of land with reservation of minerals, could not claim them by adverse possession of surface, but could start adverse possession of them only by working them, or other act of dominion showing assertion of title and use in accordance therewith.

   Pritchard, Circuit Judge, dissenting.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Southern District of West Virginia, at Huntington; Benjamin F. Keller, Judge.

On rehearing. Affirmed.

For former opinion, see 242 Fed. 373, 155 C. C. A. 149.

Maynard F. Stiles, of Charleston, W. Va., for appellant.

W. R. Thompson, of Huntington, W. Va. (J. S. Clark and H. A. McCarthy, both of Philadelphia, Pa., and W. C. W. Renshaw, J. H. Meek, and Z. T. Vinson, all of Huntington, W. Va., on the brief), for appellees.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. The material allegations of the bill are: The recovery in August, 1880, in an action of ejectment by Abiel A. Low and others, complainants' predecessors in title, of a large body of land including the tract of 194 acres claimed by defendants Abraham Midkiff and Newton Midkiff; the execution on September 15, 1882, of a deed by Low and others, plaintiffs in the action of ejectment, by J. I. Kuhn, their attorney in fact, to Abraham H. Midkiff, Solomon R. Midkiff, and Harriett Adkins, defendants in that action, conveying the land in dispute, with the reservation to the grantors of the minerals and easements necessary for their development; acceptance of the deed by the grantees and their agreement to have it recorded; the loss or destruction of the deed without recording, in some way unknown to complainants (if the deed was lost, the loss from inadvertence, if destroyed, the destruction with the fraudulent intent on the part of the grantees or those claiming under them to remove by destruction the muniment of the complainants' title to the minerals); complainants' failure to find the deed after diligent search; preservation by Kuhn of the copy of the deed attached as an exhibit to the bill; recent execution of a lease by S. R. Midkiff and Newton Midkiff for oil and gas purposes; possession of the surface but not of the minerals by A. H. Midkiff, S. R. Midkiff, Harriett Adkins, and those claiming under them since the execution of the deed by Kuhn, attorney in fact; possession by the complainants and their predecessors in title of the minerals and payment of the taxes on the entire land embraced in the recovery of 1880 since 1890, when they began to drill for oil and gas, without any claim of possession or title to the minerals on the land in dispute by the defendants or their predecessors in title after the execution of the deed by Kuhn, attorney in fact, until the recent discovery of oil and gas in the vicinity; purchase by Newton Midkiff of a portion of the land with notice of the deed of Kuhn.

The relief asked was that the alleged lost deed be established; that the title and possession of the complainants to the minerals and mining rights be quieted; that all deeds and leases under which any of the defendants claim title to the minerals be canceled; that the defendants be enjoined from asserting title to the minerals by lease, conveyance, or any other manner, and from hindering and delaying complainants in the enjoyment and development of their mineral rights.

The defendants by their answer objected to the jurisdiction of the court of equity on the ground that the complainants had a plain and adequate legal remedy; and they denied the recovery of the judgment in the ejectment against them or their predecessors in title, the possession of the complainants or their predecessors in title, and the execution of the deed by Kuhn. As to the deed they averred:

"These defendants further deny that any such deed was ever received or accepted by the said Solomon R. Midkiff, Abraham Midkiff, and the said Harriett Adkins, and they aver that no such deed within the knowledge of these defendants was ever executed or placed upon the records of Lincoln county, W. Va."

The District Court overruled the objections to the jurisdiction, and on the testimony made a decree granting the relief asked by the complainants.

[1] The jurisdiction of the court of equity cannot be doubted. True, there is authority for the statement that, where nothing more appears than that a claimant to land wishes to assert title under a lost deed, equity will not aid him to establish it, because he may at once bring his action of ejectment and avail himself of the lost deed by proving its execution and contents as effectually at law as in equity. Whitfield v. Taussat, 1 Ves. 392, 1 Story, Eq. 84. With the correctness of this view we are not concerned, for the bill sets out other grounds for equitable relief in alleging that by the Kuhn deed the surface and minerals were severed, that since its execution the defendants have not been in possession of the minerals, that the deed was left in the custody of the grantees and accepted by them, that they have either inadvertently lost it or fraudulently destroyed it, that it has not been recorded, and that in contravention of it defendants have recently asserted title to the minerals. The deed not being recorded, there is danger to the complainants of a conveyance by the defendants to a bona fide purchaser without notice of the severance of the surface from the minerals and of the complainants' ownership of the minerals, relying on the defendants' occupancy of the surface as conferring title by adverse possession of both surface and minerals. Moreover, the market value of complainants' property is affected by their inability to show by a record of the Kuhn deed that defendants' occupancy of the surface was not adverse holding of the minerals.

Equity will aid a claimant to land in establishing a deed upon which his title depends, lost or destroyed by an adverse claimant, to the end that he may by preserving and recording protect himself against a bona fide purchaser for value and that he may be able to show a good marketable title. The right to invoke the protection of the court of equity under such circumstances is established by authority from which there is no dissent. Simmons Co. v. Doran, 142 U. S. 449, 12 Sup. Ct. 239, 35 L. Ed. 1063; Sharon v. Tucker, 144 U. S. 533, 12 Sup. Ct. 720, 36 L. Ed. 532; Cartright v. Cartright, 70 W. Va. 507, 74 S. E. 655, Ann. Cas. 1914A, 578; 17 R. C. L. 1170.

[2] On the merits it is first contended by appellants that the suit must fail and the judgment must be reversed because the deed executed by Kuhn, under power of attorney, which complainants seek to es-

tablish, was not embraced in the authority conferred on him. It is true that the power of attorney on its face gives authority only to execute such deeds "as may be proper and necessary to execute in order to settle and compromise certain actions of ejectment now pending," and the deed here in question was not executed until the suit had culminated in a judgment in favor of the plaintiffs. But if the grantees accepted the deed and held the land under it, they would be estopped from alleging its invalidity against Kuhn's principals ratifying it and claiming under it. They could not accept the benefit of it by remaining in possession and using the land, and afterwards repudiate it in the effort to escape its limitations and reservations.

[3, 4] The next defense is that the deed conveying the surface to the Midkiffs and reserving the mineral rights was never accepted. At the time the deed was made, the grantees had been adjudged to have no interest whatever in the land. Since the deed from the owners conferred benefits on them and was found in the possession of Abraham Midkiff, one of the grantees, there is strong presumption of its acceptance. Guggenheimer v. Lockridge, 39 W. Va. 457, 19 S. E. 874; 12 R. C. L. 999–1000.

This presumption is re-enforced by conduct of the grantees proving its acceptance. Abraham Midkiff testified that he could not remember whether Solomon and his sister, Harriett Adkins, the other grantees named in the deed, were present when the deed was given to him or not; but he testified that he had talked to Solomon about it. It was retained and carefully preserved by Solomon and Abraham Midkiff, two of the grantees. Abraham, the grantee who originally received the deed, afterwards acquired the interests of the others. After that acquisition he was still presumptively, and under the proof, holding under the deed when he sold to his son, Newton, in 1899. The evidence shows beyond doubt that the existence and terms of the deed were well known and much discussed in the entire family, and that it was accepted and carefully preserved as a muniment of title.

The only evidence tending to show that the deed was not accepted is that of Abraham Midkiff that it was brought to him by Kuhn as a proposition to compromise the judgment in ejectment and was received by him with the understanding that if it was accepted as a compromise he was to return it to Kuhn; that he concluded not to accept it, and said nothing more to Kuhn about the matter. The statement that the grantees were to return to the grantors the deed, which was their only protection, if accepted, even if it were not disproved by their conduct, is intrinsically improbable, if not incredible. The danger of its acceptance by the court is emphasized by the fact that Kuhn, the attorney in fact who made the deed, is dead. When its improbability is considered in connection with the other circumstances showing acceptance of the deed, the defendant's case appears to have no substantial foundation. If a grantee who has no title to land receives a deed of conveyance from the true owners at the time it was made, carefully preserves it, and produces it from his possession, be allowed to defeat it by testifying that he never accepted it and that he has been holding adversely to it, the result would be unfortunate insecurity of land titles.

[5] After the recovery in ejectment, the defendants in that suit could not assert title by adverse possession against the plaintiffs adjudged to be the true owners, until they gave notice that their holding was adverse and in the assertion of actual ownership in themselves. No such notice was ever given. As to the defense of adverse possession set up by a party in the same position, the Supreme Court, in Root v. Woolworth, 150 U. S. 401, 415, 14 Sup. Ct. 136, 140 (37 L. Ed. 1123), says:

"In his position he could not have asserted adverse possession after the decree against him, without bringing express notice to Morton or his vendees that he was claiming adversely. Without such notice the length of time intervening between the decree and the institution of the present suit would give him no better right than he previously possessed, and his holding possession would, under the authorities, be treated as in subordination to the title of the real owner. This is a well-established rule."

[6] Equally untenable is the position that Newton Midkiff was a purchaser for value without notice. It is true he denied that he had any notice of the deed until the commencement of this suit; but Abraham Midkiff, his father, a witness introduced by him, testified that he talked with him about the deed at the time he purchased. Thus he was put upon notice of its contents.

[7] Nor is Newton Midkiff in a position to claim the minerals by adverse possession. At the time he purchased from Solomon, the minerals and the surface had been severed by a conveyance of the true owners of the land with a reservation of the minerals. He bought with notice of this severance, and therefore could not claim the minerals by adverse possession of the surface. Adverse possession of the minerals could have been started only by actual working of them or some other act of dominion over them showing assertion of title and use in accordance therewith. Wallace v. Elm Grove Coal Co., 58 W. Va. 449, 52 S. E. 485, 6 Ann. Cas. 140; Plant v. Humphries, 66 W. Va. 88, 66 S. E. 94, 26 L. R. A. (N. S.) 558; Kiser v. McLean, 67 W. Va. 294, 67 S. E. 725, 140 Am. St. Rep. 948; Steinman v. Jessee, 108 Va. 567, 62 S. E. 275.

The decree of the District Court is supported by the clear preponderance of the evidence.

Affirmed.

PRITCHARD, Circuit Judge (dissenting). I cannot concur in the opinion of the majority of the court in this instance, and in the main my reasons for not doing so will be found in the opinion of this court when this suit was here at the former hearing. In addition to what the court said on that occasion as respects what is known as the Kuhn deed, in a suit like this I think it is well to consider the parties—their station in life and their capacity for properly determining as to what one would do when situated as Abraham Midkiff was at the time Kuhn approached him with the compromise deed.

The appellees are a corporation owning large tracts of land, and exploiting the same for gas, oil, coal, and other minerals, and having ample means for the prosecution of that work from the time of the purchase of the land until the products are taken from the soil. It

must be assumed from what appears in the record that this corporation was able to employ counsel learned in the law, and therefore well prepared to guard its interests of the corporation at every turn, in a legal sense, at the time of this transaction.

On the other hand, it appears that the appellant and those under whom he claims are plain mountain people with small means, and owing to their lack of early training were in no sense a match for the able and adroit representative of the corporation. It is true that the appellees insist that they have shown that Abraham Midkiff was represented by counsel in the suit wherein appellees obtained a judgment for the recovery of this land; but Midkiff testified positively that he never employed counsel for that purpose, and that, after he was told by Kuhn that a judgment had been entered against him declaring the title to be in appellees, he immediately took such steps as he in his humble way thought proper in order to protect his interests, but that he failed to ascertain any information calculated to put him upon notice of the existence of such judgment. That Abraham Midkiff recognized his inability to cope with Kuhn is made apparent by his refusal to sign the deed at the time it was presented to him, and the further fact that he laid it aside in order that he might make an investigation as to the truthfulness of the statements made to him by Kuhn. Under these circumstances, to bind Abraham Midkiff, by a technical construction of the law would, in my judgment, be giving an undue advantage to the strong as against the weak.

The conduct of the corporation and its agents since the pretended delivery of the deed clearly shows that they have not used that diligence which one must show when he invokes the aid of a court of equity. For 31 years appellees and their agents could have had access at any day to the records of Lincoln county, where they could have ascertained as to whether the deed had been signed by Midkiff and placed upon record. This they failed to do. Neither does it appear that the corporation or its agents ever made any further request of Midkiff to sign the deed in question. They knew full well that unless the deed was signed and accepted and placed upon record it would not avail them.

In interpreting the conduct of these people, which means taking into account what they did and said as respects this matter, it is highly important that all these facts should be given due weight. What might be sufficient to bind a well-educated business man, trained in the conduct of his business, ought not in a court of equity prevail against the weak and uneducated. Under these circumstances, I cannot escape the conclusion that the appellees are guilty of laches, and therefore should not be permitted to maintain this suit for that reason if for no other.

While the question of jurisdiction was raised by the assignments of error when the cause was here in the first instance, that question was not formally disposed of, and therefore remains open. Upon a further and more mature consideration of this matter, I think the question of jurisdiction demands our careful consideration.

It cannot be reasonably insisted that the court below had jurisdiction of this suit to remove a cloud from or to quiet title, inasmuch as

the proof clearly shows that the appellant was and had been in possession of this property for about 31 years at the time of the institution of this suit. It also appears from the bill that the lands in question had been leased to certain parties for oil and gas purposes, and we must assume that the lessees were at the time of the institution of this suit in the adverse possession of the minerals, holding under appellant.

In the thirteenth paragraph of the bill, among other things, it is alleged:

"That the recent discovery of oil and gas in the vicinity of the said land had caused the same to become of considerable value, and your orators are informed, and now allege upon such information and belief, that the said defendants and each of them are now asserting some claim or title to the said minerals."

As we have stated, the evidence clearly shows that the appellant and those under whom he claims have been in the open, notorious, and adverse possession of these lands for more than 31 years. The appellees denied that the appellant was in possession, and pleaded sole seisin, which clearly raised the issue as to who possessed the legal title and had the effect of depriving the court below of jurisdiction. Baylis v. Travelers' Ins. Co., 113 U. S. 316, 5 Sup. Ct. 494, 28 L. Ed. 989; Gilbert et al. v. Hopkins et al. (C. C.) 171 Fed. 704; Id., 204 Fed. 196, 122 C. C. A. 432. Notwithstanding this, the jurisdiction of the court below was invoked for the sole purpose of establishing the existence, contents, and loss of the alleged deed from Low and others to A. H. Midkiff and others, as evidence of title to the minerals which appellees allege they reserved, and upon which the court was asked to declare appellees the legal owners of the same, and therefore entitled to possession. It is well settled that in an ejectment suit one may sue for the possession of the property of another in an action of ejectment notwithstanding his recovery is dependent upon the establishment of lost instruments.

In the case of Donaldson v. Williams, 50 Mo. 407, the court, among other things, said:

"Plaintiff may sue directly in ejectment for the possession of property, although his suit is based upon lost instruments. He need not in the first instance resort to a bill in equity to prove the making and loss of the deeds."

Therefore appellees had a plain and adequate remedy against the appellant for the establishment of the alleged lost deed in an action of ejectment. The burden was upon the appellees to show by a preponderance of evidence the existence, contents, and loss of the deed, which involved mixed questions of law and fact entitling appellant to have the same tried by a jury. Smith v. Moore, 149 N. C. 185, 62 S. E. 892.

United States Revised Statutes, § 723 (Comp. St. 1916, § 1244), is in the following language:

"Suits in equity shall not be sustained in any court of the United States in any case where a plain, adequate, and complete remedy may be had at law."

This statute is not only declaratory of the principle to which I have just referred, but it was intended to impress the importance of the

same upon those charged with the administration of justice. I cannot understand upon what theory this rule should not apply where it is sought to prove or establish deeds, as well as in any other action, wherein it appears that the appellee has a plain and adequate remedy at law. I do not mean to say that a court of equity would not have jurisdiction to prove, restore, and establish a lost deed or other muniment of title where it is the main relief sought to be established. However, in this instance the main relief which appellees seek is not cognizable in a court of equity involving as it does legal title and possession of the lands in question, and therefore that which is merely incidental to the right upon which appellees base their action for relief is not sufficient to extend jurisdiction of a court of equity over the legal rights and questions which must necessarily be determined in order that appellees may prevail.

"To enable a party to come into equity for relief in case of a lost deed, he must establish, either that there is no remedy at all at law, or no remedy that is adequate to the circumstances of the case." 13 Am. & Eng. Enc. of Law, 1073; 1 Story's Eq. Jur. (13th Ed.) § 84; Dormer v. Fortescue, 3 Atk. 132; Dalton v. Coatsworth, 1 P. Wms. 731; Worthy v. Tate, 44 Ga. 152.

"The bill must always lay some ground besides the mere loss of title deeds or other instruments to satisfy a prayer for relief; as that the loss obstructs the right of the plaintiff at law, or leaves him exposed to undue perils in the future assertion of his rights." 1 Story's Eq. Jur. § 84; Mitf. Eq. Pl. 113, 114.

It was said by Lord Hardwick, in Whitfield v. Faussat, 1 Ves. 392:

"The loss of a deed is not always a ground to come into courts of equity for relief; for, if there was no more in the case, although the plaintiff is entitled to have a discovery of that, whether lost or not, courts of law may afford just relief since they will admit evidence of the loss of a deed, proving the existence of it, and the contents, just as a court of equity does."

We think that the case of Lockwood v. Carter Oil Co., 73 W. Va. 175, 80 S. E. 814, 52 L. R. A. (N. S.) 765, is very much in point and tends to strengthen what I conceive to be the proper rule. In that case the court in its opinion, among other things, said:

"It is settled law that, if the main purpose of the suit is to settle title or boundary to land and no other grounds of equity exist, accounting and discovery of profits are merely incidents to the right of title, and equity has no jurisdiction of the controversy."

It not infrequently occurs where an action of ejectment is tried that an injunction or receivership or some other relief is granted. Incidentally relief of this character where a proper showing is made is always granted as a matter of course, and by granting the same the plaintiff or defendant, as the case may be, is not denied his right to have his contention settled by a jury. Indeed, I think the Supreme Court of West Virginia does not favor the use of a court of equity for the purpose of trying actions at law, however skillfully the real purpose of the suit may be concealed. The Supreme Court of that state, in the case of Freer v. Davis, 52 W. Va. 1, 43 S. E. 164, 59 L. R. A. 556, 94 Am. St. Rep. 895, where the plaintiff sought to invoke the jurisdiction of a court of equity in order to restrain a trespass, said:

"There is but one general proposition laid down in the books upon which it can be contended that, in a case like this, a court of equity may try and

determine the question of title. That is the familiar maxim that, when a court of equity has taken jurisdiction for one purpose, it will go on and do complete justice between the parties, even to the extent of determining legal rights. But this principle is not of universal application, even if it be conceded that jurisdiction, as here used, includes jurisdiction by injunction to restrain a trespass, which is doubtful, to say the least, inasmuch as the lawwriters term it mere ancillary jurisdiction. * * *

" 'To [further] justify a court of equity in granting relief, as consequent upon discovery, in cases of this sort, it seems necessary that the relief should be of such a nature as a court of equity may properly grant in the ordinary exercise of its authority. If therefore the proper relief be by an award of damages, which can alone be ascertained by a jury, there may be a strong reason for declining the exercise of the jurisdiction, since it is the appropriate function of a court of law to superintend such trials. And, in many other cases where a question arises, purely a matter of fact, fit to be tried by a jury, and the relief is dependent upon that question, there is equal reason that the jurisdiction for relief should be altogether declined; or, at all events, that if the bill is retained, a trial at law should be directed by the court and relief granted, or withheld, according to the final issue of the trial.'

"From this it is apparent that, even when equity jurisdiction attaches for the purpose of discovery, there are exceptions to the rule that the court will go on and determine all questions in the cause, without regard to whether they be legal or equitable. And the decisive test seems to be the necessity of a trial by jury of disputed questions of fact necessary to the ascertainment of the legal right involved. As discovery belongs to the general jurisdiction of equity, and the jurisdiction by injunction is rather special in its nature and scope, it would be unreasonable to say that, while the presentation of the necessity of a trial by jury will stop the progress of the cause when jurisdiction rests upon discovery, it will not do so when jurisdiction attaches because of the necessity of interference by injunction to prevent irreparable injury, pending a determination of the primary right involved. There are cases in which it is said that, although the only equitable ground of jurisdiction was the necessity of the exercise of the restraining power of the court by injunction, equity went on and passed upon the legal rights of the litigants; but in every instance the case was one of accident, fraud, mistake, or account, belonging to the general concurrent jurisdiction of equity, and in no case has any court proceeded so far as to hold that having taken jurisdiction to restrain a trespass to real estate, it would go on and determine the legal title to the land, when that was in dispute and a trial by jury was necessary by reason of controverted matters of fact, such as possession, boundary, and location. On the other hand, there is an abundance of authority holding the contrary doctrine."

For the reasons stated, I am clearly of the opinion that the former decree of this court should not be disturbed.