76 | 587
95 | 56

## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

JOHNSON, TRUSTEE v. WAGNER AND SONS.

July 27, 1882.

1. FRAUDULENT CONVEYANCES—*Case at bar.*—In 1870 judgment was rendered on debt contracted in 1859. In 1857 the debtor conveyed his property to his *brother*, to avoid paying anticipated judgment in slander suit. The bonds taken from *brother* for the price were handed to his *son*. Brother held the property two years and then conveyed it to the *son,* who surrendered the bonds. In 1865 the property was sold to a *bona fide* purchaser, and other property, purchased with the proceeds, was conveyed to *son,* as trustee for wife and children of the debtor. From 1857 to 1865 the property remained in the possession and control of the debtor. In suit to subject the property held by *son,* as trustee, to satisfy the judgment—

HELD:

    1. The deeds of the debtor and of the *brother* were upon a secret trust for the use of the debtor, and actually fraudulent and void, both as to them, and as to subsequent creditors.

    2. The judgment cannot be questioned in this proceeding. It may be enforced against any property held by the debtor at the time the debt was contracted, or acquired with the proceeds thereof, in the hands of mere volunteers.

2. FRAUDULENT CONVEYANCES—*Tort.*—It is settled doctrine that a deed made with intent to defeat a recovery of damages in an action of *tort,* and before trial and judgment, is fraudulent and void to the same extent as a conveyance to hinder and delay existing creditors. The intent need not be established by *express* proof.

3. CHANCERY PRACTICE—*Rents and profits.*—The bill alleged that the rents and profits would not in five years pay the judgment. This was not specifically denied. Without inquiry, decree of sale was rendered. No exception taken until in argument here.

HELD:

    No ground for reversal. Decree will be amended so as to direct inquiry below.

4. IDEM—*Sale.*—Court below hath discretion whether to decree sale of all or part of the land. Appellate court will not reverse a decree in this respect unless plainly erroneous.

Appeal from decree of circuit court of Grayson county, in suit of M. M. Wagner and sons *against* B. O. Johnson and Elizabeth, his wife, Haywood Cox, W. W. Johnson (late trustee), Andrew Hampton, Hastin Fulton and B. O. Johnson (present trustees), John Johnson, B. F. Johnson, A. M. Johnson and R. K. Johnson. The object of the suit was to subject to the payment of the plaintiff's judgment property held by the present trustees for the use of B. O. Johnson's wife and children, and acquired with the proceeds of property which was alleged to have been fraudulently conveyed by B. O. Johnson, in 1857, to his brother, in order to defeat the recovery of damages in a slander suit against him, and in 1859 conveyed by the brother to the son of B. O. Johnson, who held it in 1865, when it was conveyed to a *bona fide* purchaser, and with the proceeds thereof the property now sought to be subjected was purchased. Decree was rendered in court below against the trustees and the land subjected to sale to pay the judgment. The trustees appealed.

Opinion of court states the facts and defences.

*William Terry* and *A. M. Dickerson,* for appellant.

*A. M. Davis, W. V. Wilson* and *W. H. Bolling,* for appellees.

STAPLES, J., delivered the opinion of the court.

The court is of opinion that the deed executed by Benjamin O. Johnson to his brother, R. H. Johnson, on the 18th of April, 1857, was upon a secret trust for the use and benefit of the grantor. That deed purports to be a sale and conveyance of the property to the grantee, in consideration

of the sum of $3,000 then paid.    It seems, however, that no part of the purchase money was ever paid; but the bonds of the grantee were taken and placed in the possession of W. W. Johnson, a son of B. O. Johnson, the grantor.    The pretence now set up that these bonds, or their proceeds, were to be invested in the purchase of other property, for the benefit of B. O. Johnson's wife and children, is not sustained by any deed or other writing, nor, indeed, by any evidence except the unsupported declaration of the grantor, made twenty years after the date of the alleged transaction.    It is needless, perhaps, to say that both at common law and under the statute husband and wife are incompetent to testify for or against each other, and as the witness' testimony is in support of his wife's claim it is inadmissible.    It further appears that at the time of the execution of the deed to R. H. Johnson, in 1857, he was insolvent and wholly unable to comply with such a contract.    The witnesses speak of him as "a very poor and shiftless person, and entirely without means to pay for the land."    After the lapse of two years R. H. Johnson conveyed the title to W. W. Johnson, who has been already mentioned as the son of B. O. Johnson, and the bonds of the pretended purchaser were returned to him and the contract cancelled.    It seems that the title remained in W. W. Johnson until the sale and conveyance in November, 1865, to R. T. Wilson, at the price of $3,150.    His bonds, or their proceeds, were invested in the property, which is the subject of this controversy.

It clearly appears by the evidence that notwithstanding the deed to R. H. Johnson in 1857, Benjamin O. Johnson, the grantor, continued in the actual possession of the property, cultivating the land, or renting it out and receiving the proceeds, and in every respect exercising such dominion and control as belonged to the absolute ownership of the estate.    And the proof is that he so continued to exercise

such control and dominion until the sale to Wilson in 1865, and was universally regarded in the community as the owner. When, therefore, the appellant states that his object in divesting himself of the title for the benefit of his family was that he might withdraw his mind from worldly matters and devote himself to the ministry, he is contradicted by the proof of his active and temporal control of the property precisely as though no change in the title had been effected.

The evidence further shows, that an action of slander had been instituted in a Tennessee court against B. O. Johnson, which resulted in a verdict for the plaintiff. It was under the apprehension of a recovery in that action, and to prevent the payment of damages, that he divested himself of the title to the property, under color of the conveyance to his brother and son. This is proven by his declarations, made on various occasions to a number of witnesses, whose veracity is not attempted to be impreached. And after the judgment was recovered against him, he declared it was most unjust, and that he intended never to pay it; and to that end, he had put the title to his property out of his control.

It is well settled that a deed made with intent to defeat a recovery by a third person of damages in an action of *tort,* and before trial and judgment, is fraudulent and void to the same extent as a conveyance to hinder and delay existing creditors. Jackson on demise of *Van Buren* v. *Myers,* 18 Johns. Rep. 425; *Greer* v. *Wright,* 6 Gratt. 154.

It is also well settled that if a conveyance be actually fraudulent with respect to existing creditors, it is also fraudulent as to subsequent creditors. Whether the fraud relate to one class or to the other class, the effect is the same, and the subsequent creditor may, upon the strength of the fraud, successfully impeach the conveyance. The transaction, being a nullity, cannot stand in the way of any

creditor. Nor is it necessary that the fraudulent intent be established by express proof. It may be shown by just legal implication from the evidence, where the circumstances are such that the intent may be justly inferred. *Johnston* v. *Zane*, 11 Gratt. 552; *Pratt et als.* v. *Cox*, 22 Gratt. 330. If, therefore, it should be conceded that the appellees are subsequent creditors, in the sense contended for by the appellants, still, as to them, the deeds executed by B. O. Johnson to R. H. Johnson in 1857, and by the latter to W. W. Johnson in 1859, are null and void, because those deeds were parts of a transaction intended to defraud existing creditors.

It is not necessary to rest the case upon this ground exclusively. It appears that the debt due the appellees was contracted in 1859. Its existence and validity have been since established by the judgment of a court of competent jurisdiction, and neither can be called in question in this proceeding. The appellees have a legal right to enforce that judgment against any property held by the appellant at the time the debt was contracted, or against any estate acquired with the proceeds of such property in the hands of mere volunteers.

It has been already seen that the deeds of 1857 and 1859 were merely secret trusts for the use of B. O. Johnson, and that he was the beneficial owner of the land, notwithstanding the title was in his brother and son. The subsequent settlement upon his wife and children, which was merely voluntary, if not actually fraudulent, cannot, of course, stand in the way of prior creditors. For these reasons, the court is of opinion that the circuit court did not err in holding the property in controversy liable to the claim of the appellees.

The court is further of opinion, that although under the statute and the decisions of this court it is, as a general rule, improper to decree a sale of real estate without first

ascertaining that the rents and profits will not pay off the debt in five years, it does not necessarily follow that the failure to make the proper inquiry in that respect will result in a reversal of the decree of sale. In the present case the bill avers that the rents and profits will not pay off the debt due the appellees in five years. The answer of the appellants does not specifically deny this averment or make any allegation with respect to the rents and profits, but simply contains a general denial of all the statements of the bill not specially admitted. Such form of denial was well calculated to mislead the court, and the opposing counsel more especially, as no inquiry was asked and no reference made to the matter in the court below. The point is not even made in the petition for an appeal, but is raised for the first time in the argument here. In *Manu's* v. *Flinn's Adm'r*, 10 Leigh, p. 169, Judge Stanard, in discussing a like question, said: "It is plain there was no controversy between the parties as to the manner of raising the money; that the decree being interlocutory, the appellants had full opportunity to apply for a modification of it before the sale would take place under it, if they preferred a decree so modified to the one which was rendered, and if they now have such preference, this court may give them the benefit of it without reversing the decree." The same view was taken by this court in *Ewart* v. *Saunders*, 25 Gratt. 209. Under the authority of these cases, the appellant may still have an inquiry in the court below, touching the rental value of the land, if they desire it, and to that extent the decree may be modified by this court.

Complaint is also made that the court below decreed a sale of a tract of land worth $3,000 to satisfy a claim or debt not exceeding $400, when a sale of part only would have been sufficient. Here again we encounter the same difficulty that the whole matter was passed *subsilentio* in the court below. Not a word on the subject was said by any

body, and the circuit judge might well have presumed that all parties were willing to the sale of the entire tract, or he may have overlooked the question entirely. Upon this point all that is necessary is to refer to the case of *Long et als.* v. *Weller's Ex'or,* 29 Gratt. 347, 358. In the opinion there delivered by Judge Burks it was held that whether it be necessary to sell the whole subject, or proper to sell a part only, is a matter resting very much in the sound discretion of the lower court. And whilst that discretion is subject to the supervision of the appellate court, the latter will not reverse unless the decree appears plainly erroneous. This court cannot, therefore, reverse the decree in the present case. Inasmuch, however, as the case must be remanded on other grounds, the decree may be so modified as to direct a sale of part only of the tract, in the first instance; and, secondly, a sale of the whole, if such part prove to be insufficient to satisfy the debt and costs. All this may be properly provided for in one and the same decree. The decision of this court, therefore, is that the decree of the circuit court be amended and affirmed with costs.

AMENDED AND AFFIRMED.