| 39 | 457 |
|----|-----|
| 47 | 750₁ |

| 39 | 457 |
|----|-----|
| 59 | 112 |

| 39 | 457 |
|----|-----|
| 61 | 476 |

| 39 | 457 |
|----|-----|
| h62 | 76 |

## WHEELING.

GUGGENHEIMER *et al.* v. LOCKRIDGE *et al.*

Submitted January 20, 1894.—Decided June 11, 1894.

1. FRAUDULENT CONVEYANCE — JURISDICTION — EQUITY — LIEN — DEBTOR AND CREDITOR.

Under section 2, c. 133, Code, a creditor before obtaining judgment may sue in equity to avoid a fraudulent transfer of his debtor's property and, if successful, has a lien from the commencement of his suit.

2. FRAUDULENT CONVEYANCE — JURISDICTION — EQUITY — LIEN — DEBTOR AND CREDITOR.

After a grantee in a fraudulent conveyance has re-conveyed the property to the debtor (grantor) equity has no jurisdiction of a suit by a creditor to subject the property in advance of lien by judgment or otherwise merely because of such fraudulent conveyance.

3. DEED—PRESUMPTION—REMITTER.

A deed must not only be delivered by the grantor but must also be accepted by the grantee. Acceptance may be express by signing the deed or otherwise or may be implied from circumstances. The assent of the grantee will be presumed, where the deed is beneficial to him, until dissent appear. Where dissent or disclaimer appears, the deed is inoperative, and the title to the thing granted reverts to the grantor by remitter from such disclaimer.

4. FRADULENT CONVEYANCE—JURISDICTION—EQUITY.

Where such a fraudulent deed is made but is disclaimed by the grantee, equity has no jurisdiction of a suit brought after such disclaimer by a creditor of the grantor to subject the property to debt, in advance of judgment, merely because of such deed.

5. DEED—REGISTRY.

A deed is good between the parties without registry, as registry is only to protect subsequent purchasers from the grantor for valuable consideration without notice and creditors; and therefore

58

the registry of a deed without the knowledge or consent of the grantee will not bar him from disclaiming it.

6. DEED—JURISDICTION—EQUITY.

A transfer from one joint debtor to another will not give equity jurisdiction to entertain a suit by that creditor of the grantor in advance of lien by judgment or otherwise to subject the property to his debt.

A. S. RUCKER for appellant cited Code, c. 133 s. 2; Id. c. 74, s. 1, 2; Id. c. 99, s. 11; Id. c. 139, s. 7; 10 W. Va. 470 (p't 2 Syll.) 486; 28 W. Va. 623, 630; 20 W. Va. 210; 5 Call. 525, 529; Wart. Fraud. Conv. § 54, 132, 151; 45 N. H. 519; 20 Pick. 377; 5 Paige 65; 33 Barb. 30; 2 Rob. (old) Pr. 275, 277; Sto. Eq. Pl. § 531; 1 Pom. Eq. Juris. § 245, 274; Ad. Eq. (3rd Am. Ed.) 694 (n. 1); Sto. Eq. Pl. § 283, 284, 284a, 544; 1 Bar. Ch'y Pr. 255; Id. 356; 20 Gratt. 678; 30 Gratt. 726; 28 W. Va. 623; 20 Pick. 368; 36 W. Va. 582; 29 Gratt. 112, 125; 14 W. Va. 22; 35 W. Va. 167, 172; 14 W. Va. 640; 23 W. Va. 760; 22 W. Va. 404, 412.

W. M. & J. T. McALLISTER for appellee, National Bank of Buena Vista cited 4 Min. Inst. 366; 21 W. Va. 211; 8 Am. & Eng. Ency. L. 774; Code, c. 133, s. 2; 27 Gratt. 499; Code, Va. (1887) § 2460; 31 W. Va. 156; Code, c. 71, s. 1; 5 Am. & Eng. Ency. 423; Id. 445, 446, 448, 449; 2 Min. Inst. 773; Milf. Eq. Pl. 102; Id. 147; 4 Cow. 682; 6 Am. & Eng. Ency. L. 760; 11 W. Va. 449; 7 Gratt. 265; 20 W. Va. 210; 26 W. Va. 72; 279 W. Va. 167; 28 W. Va. 623; 31 W. Va. 601; 26 Gratt. 291–295; 30 W. Va. 248; 29 W. Va. 1; 37 W. Va. 26; Sto. Eq. Pl. § 891; 21 U. S. 513; 113 U. S. 756.

L. M. McCLINTIC for appellee Lockridge, cited Code, c. 133, s. 2; Id. c. 74, s. 2; 30 W. Va. 687; Id. 699; 11 W. Va. 511; 26 Gratt. 296; 141 U. S. 656 Ad. Eq. (7th Am. Ed.) 310 (t. p.); 29 Gratt. 112; 30 W. Va. 269; 15 W. Va. 444; 30 W. Va. 774 (p't 5 Syll.); 75 Va. 341; 76 Va. 913; 20 W. Va. 210; 16 W. Va. 625; 27 Gratt. 479; 31 W. Va. 156; 37 W. Va. 552.

BRANNON, PRESIDENT:

This suit in chancery was in the Circuit Court of Poca-

hontas county by Guggenheimer & Co. against Lockridge and others.    Upon demurrer the suit was dismissed; and Guggenheimer & Co. appeal.    The question at the threshold of the case is:    Has equity jurisdiction of the suit upon the case as made by the bill?    The original bill sets up a joint and several debt by notes in favor of Guggenheimer & Co. against H. M. Lockridge and J B. Lockridge and seeks to avoid as fraudulent conveyances of land one made by J. B Lockridge to Ernest N. Moore for one tract of land, and one from H. M. Lockridge to J. B. Lockridge for another tract.    The plaintiffs are only general creditors of the two Lockridges by note and had no lien, but claim the right, as such general creditors, before obtaining judgment at law to sue in chancery to avoid fraudulent conveyances by authority of section 2, c. 133, of the Code, authorizing a creditor before obtaining judgment to institute any suit to avoid a fraudulent transfer of or charge upon the estate of his debtor, which he could institute after judgment.

Before the enactment of that statute such general creditor having no lien could not go into equity to enforce his debt by assailing a fraudulent conveyance.    *Kelso* v. *Blackburn*, 3 Leigh, 299 ; Bump, Fraud. Conv. 521 ; *Guano Co.* v. *Heatherly*, 38 W. Va. 415 (18 S. E. Rep. 611).    But under said statute he can do so and, if successful in overthrowing the fraudulent conveyance, he has a lien from the commencement of his suit.    *Clark* v. *Figgins*, 31 W. Va. 156 (5 S. E. Rep. 643) ; *Sweeney* v. *Refining Co.*, 30 W. Va. 443 (4 S. E. Rep. 431) ; *Norris* v. *Lemen*, 28 W. Va. 336 ; *Wallace* v. *Treakle*, 27 Gratt. 479.    But do the statements of the bill bring the case under the statute ?    Indeed, do they not show that equity jurisdiction can not be sustained under it ?    Take the case made by the bill, as it relates to the tract of land conveyed by J. B. Lockridge to Ernest N. Moore. While the bill states that Lockridge · executed a deed for it to Moore with fraudulent intent, yet it distinctly states that in executing the deed it was impossible that Lockridge could have communicated with Moore ; that Moore did not seek to buy the land at any price and did not pay eight thousand dollars cash or any sum, but that Lockridge made the deed to Moore without consulting him, and Moore

knew nothing of it, until after the deed had been executed and recorded at the instance of the grantor, and that on learning of it he repudiated the deed and denied any interest under it; that Lockridge and Moore met, and both agreed and admitted such facts to be true and agreed that the land should be re-conveyed by Moore to Lockridge; and that Moore had executed a deed conveying the land back to Lockridge, but Lockridge failed to put it on record with intent to hinder and defraud creditors. An amended bill states the execution of this deed re-conveying the tract from Moore to Lockridge and exhibits it; and it appears to have been made prior to the institution of this suit.

It appears from the showing of the plaintiffs that while Lockridge, so far as his mere act could do so, had made a fraudulent transfer to Moore, the land had re vested in the debtor, Lockridge, by re-conveyance. That fact does away with any call for equity, which entertains a suit to avoid fraudulent conveyances only because the fraudulent conveyance has removed the estate out of the reach of ordinary remedial process against the debtor by divesting him of it, so that a judgment at law against the debtor would not operate as a lien, and vesting it in another; and it is to brush away such conveyance and restore the land to the debtor, so far as the creditor is concerned, that equity assumes jurisdiction. Where the parties have repented, and done themselves the act of re-conveyance, where is the call for equity intervention? It is again within the reach of the usual remedial procedure, as though the fraudulent conveyance had never had existence.

There is a second reason for denying equity jurisdiction. The bill states that Moore did not assent to or ratify the deed but repudiated it on learning of it. Did an estate in the land vest in Moore? If it did not, where is the reason for equity jurisdiction, the estate remaining in the grantor? Is acceptance by a grantee of the deed a part and parcel of the act of delivery? On all hands we find agreement, that delivery of a deed is an indispensable element in its execution. Is acceptance by the grantee strictly a part of the act of delivery? Some so consider it, on the principle that

there can be no completed delivery without the participation of the grantee—a hand to receive as well as one to give; and, if this be not so, then the elementary writers in giving the essential parts of a deed are defective in omitting to give acceptance a distinct and separate elemental place in the definition of a deed; for on all sides it is granted that acceptance by the grantee is necessary. 2 Minor, Inst. 656; opinion in *Skipwith* v. *Cunningham*, 8 Leigh 282; *Younge* v. *Guilbeau*, 3 Wall. 636; 5 Am. & Eng. Ency. Law 446; 5 Wait, Act. & Def. 3814.

On authority we may properly say, that acceptance is not a part of delivery, but that delivery makes the deed good against the grantor vesting the estate in the grantee; but such delivery may be avoided by the disclaimer or disavowal of the deed by the grantee, and thereupon the delivery is avoided, and the estate revests in the grantor by remitter. *Thompson* v. *Leach*, 2 Vent. 198; 4 Kent, Comm. 455, note c.; *Skipwith* v. *Cunningham*, 8 Leigh 272, 282; 2 Lomax, Dig. 26, 287; 2 Minor, Inst. 656; 2 Bl. Comm. 309.

While acceptance is necessary, it need not be expressed, as it may be implied, and it will be implied from many circumstances. We must not understand that acceptance of a deed is to be expressly or affirmatively shown. The establishment of such a rule would shake innumerable titles. The language of the books is, that acceptance of a deed is necessary to its operation. Perhaps it would be better to say, that dissent by the grantee must be shown; for it is not stating the law too broadly to say, that in all conveyances beneficial to the grantee the assent of the grantee is presumed, until his dissent be shown, and this because it is for his benefit, and it is not likely one will disclaim a benefit; and also it is unreasonable, that, when a grantor has made a deed, the estate should still remain in him, and also it is to prevent uncertainty as to where the freehold is. *Skipwith* v. *Cunningham*, 8 Leigh 272, 281, 285; *Guano Co.* v. *Heatherly*, 38 W. Va. 410, point 8 (18 S. E. Rep. 611); 2 Greenl. Ev. 297; 2 Bl. Comm. 309; *Halluck* v. *Bush*, 1 Am. Dec. 60; *Peavey* v. *Tilton*, 45 Am. Dec. 365; *Lady Superior* v. *McNamara*, 49 Am. Dec. 184; 5 Wait, Act. & Def.

3814. As to delivery of deed, see *Lang* v. *Smith*, 37 W. Va. 725 (17 S. E. Rep. 213); *Newlin* v. *Beard*, 6 W. Va. 110.

The dissent and disclaimer of the deed by Moore avoided the deed, so that, when this suit was brought to avoid that deed, it had been already avoided. There was no title in Moore, but it had re-vested in Lockridge, and judgment at law against Lockridge would have been a lien upon it. Equity jurisdiction under that section depends on a consummated fraudulent transfer operating to vest title in the grantee at the institution of the suit. The facts stated by the bill show that, in law, title was in Lockridge—not in Moore. It might seem that the very fact, that Moore conveyed the land back to Lockridge, would evidence Moore's acceptance of the deed from Lockridge to him. Taken alone, ordinarily it would, but not so under the statements of the bill. It states, that at once on learning of the deed he repudiated it. That utterly avoided the deed and remitted the title to Lockridge; and I do not see how an after-acceptance could revive the dead deed and give it operation, even if he had later accepted it. But the bill definitely states, that Lockridge and Moore met, and Moore and Lockridge agreed that Moore had not accepted but had dissented, and that they agreed, that the land was to be re-conveyed. The re-conveyance was not to be made because Moore had accepted the deed to him, but because he had dissented and declined to accept in the same breath in which he agreed to re-convey, as also before he refused to accept and disowned the deed. It was only to avoid all questions as to title, that it was to be re-conveyed.

The deed was on record, and, as the disclaimer of it already made depended on oral evidence, it was a prudent precaution to have a re-conveyance on record; but the recordation was simply Lockridge's act, not Moore's, and was not an acceptance and did not have the slightest effect to prevent Moore from disclaiming. *Maynard* v. *Maynard*, 10 Mass. 456; 4 Kent. Comm. 455, in note C. It was still subject to grantee's rejection. 2 Minor, Inst. bottom page 657. The recordation of a deed does not impart any force or validity to it. On the contrary it presupposes an already perfect deed. Its only effect is, not to operate as between

the parties (as a deed not recorded is just as binding on them as if recorded) but it is to give notice to those who may afterwards for value and without notice of the deed purchase the land of the grantor, and to creditors. 2 Minor, Inst. 871; *McCandlish* v. *Keen*, 13 Gratt. 632.

Now, as to the deed from H. M. Lockridge to J. B. Lockridge for the three hundred and twenty five-acre tract. This alleged fraudulent conveyance was from one joint debtor to another. In the hands of either, it would be liable to the lien of a judgment. The deed did not remove it out of the reach of the usual remedy. No reason appears to show why it could not as readily be subjected in the hands of one debtor as the other, or why this conveyance would hinder, delay or defraud a creditor. The mere statement in the bill, that the conveyance was from one joint debtor to the other, would seem to repel any imputation of fraudulent intent and make the bill demurrable. So there is no ground for chancery jurisdiction as to this conveyance. I am therefore of the opinion, that the bill states itself out of court. For want of jurisdiction in equity we must affirm the decree of the Circuit Court dismissing the case without prejudice to another suit. There being no jurisdiction, under the practice of the court we will not consider the question of multifariousness.