# CHARLESTON.

KINNISON *et al.* v. SCOTT *et al.*

Submitted April 16, 1918.    Decided April 23, 1918.

1. FRAUDULENT CONVEYANCES—*Judgment at Law as Condition Precedent—"Creditor."*

   One entitled to unliquidated damages for breach of contract is a creditor within the meaning of Sec. 2, Ch. 133, Barnes' Code, and may bring a suit to set aside a gift or fraudulent conveyance made by his debtor with intent to hinder, delay, or defraud him in the collection of his claim, without first obtaining a judgment therefor; and in such suit a court of equity may ascertain and decree the amount of damages to which he is entitled, and enforce collection thereof against the property fraudulently conveyed. (p. 289).

2. JURY—*Trial by Jury—Equity—Suits.*

   Fraud being one of the ancient grounds of equity jurisdiction, Sec. 2, Ch. 133, Code, authorizing such suit on a legal demand, does not contravene the constitutional guaranty of trial by jury. (p. 291).

3. FRAUDULENT CONVEYANCES—*Limitation of Actions—Knowledge of Grantee.*

   Where a conveyance is purely voluntary and the suit to avoid it is brought within five years, it is not material whether the grantee knew of and participated in the fraudulent intent of the grantor. (p. 292).

4. COSTS—*Reduction of Recovery.*

   Where the decree complained of is reduced and the reduction is not more than one hundred dollars, the appellant does not thereby substantially prevail, and the appellee is, therefore, entitled to his costs. (p. 293).

Appeal from Circuit Court, Pocahontas County.

Suit by L. D. Kinnison and others against Frank Scott and others. Decree for plaintiffs, and defendants appeal.

                    *Modified and affirmed.*

*F. R. Hill,* for appellants.
*Andrew Price,* for appellees.

WILLIAMS, JUDGE:

This suit in equity is to recover damages for an alleged breach of contract whereby plaintiffs, operators of a sawmill, were employed to saw the timber on defendant's land at the price of $3.50 per M. feet and were to get the railroad ties at the price of 15c each. Plaintiffs allege that, after they had sawed about 180,000 feet of boards and secured 91 railroad ties, and before they had sawed all the timber on defendant's land or gotten all the ties, defendant, without warning to them, broke his contract by selling the remaining timber to another person. The amount of damages claimed is $782.50. Plaintiffs also allege that defendant, with intent to hinder, delay and defraud them in the collection of their debt, conveyed his land to his son W. R. Scott without consideration and charge that the conveyance was wholly voluntary and fraudulent; and further charge that since the institution of this suit, said W. R. Scott conveyed the land to his mother, Alice Scott, wife of the defendant, which conveyance they aver was likewise fraudulent and voluntary. They pray that said deeds be set aside and the land sold to satisfy their claim. The defendants Frank and W. R. Scott filed separate demurrers and answers to the bill denying the alleged fraud. Frank Scott also denies the alleged breach of his contract with plaintiffs, and avers he has paid them in full according to his contract for the amount of sawing done. He denies that he contracted with plaintiffs to saw all his timber. He denies that the conveyance to his son was fraudulent, and avers that he and his son W. R. Scott had an understanding at the time he purchased the land that he should have all the timber and his son the land, his said son having furnished more than half the purchase money therefor, and, pursuant to that agreement, he conveyed the land to his son. W. R. Scott also denies the fraud and avers that he furnished his father more than half the purchase money for the land, with the understanding at the time, that when the timber was sold his father was to have the proceeds thereof and he was to have the land, or "that the land was to be divided in some other way that would be satisfactory to both parties." The

cause was heard upon general replications to said answers, the bill taken for confessed as to the defendant Alice Scott, and upon depositions taken by the respective parties, and a decree entered against the defendant Frank Scott for $156.00, and setting aside the aforesaid deeds as fraudulent and void as to plaintiffs, and ordering the lands sold, unless the defendant or someone for him should pay the aforementioned sum within thirty days and appointing a special commissioner to make the sale.

Jurisdiction in equity is challenged by the demurrers. It is urged that plaintiffs' claim is purely one for unliquidated damages and that equity has no jurisdiction to entertain such a suit. The suit has a two-fold purpose: First, to ascertain the amount of plaintiffs' damages; and second, to have the deeds set aside as made with intent to hinder, delay and defraud plaintiffs in the collection of their claim. It is insisted that one having only a right of action for unliquidated damages is not a creditor within the meaning of the statute, Sec. 2, Ch. 133, Code, authorizing a creditor, before obtaining a judgment for his debt, to bring a suit to avoid a fraudulent conveyance by his debtor. This contention cannot be sustained by the authorities. Who are creditors within the meaning of that statute?

Sec. 1, Ch. 74, Barnes' Code, provides: ''Every gift, conveyance, assignment, or transfer of, or charge upon, any estate, real or personal, * * * * * * with intent to delay, hinder, or defraud creditors, purchasers, or other persons, of or from what they are or may be lawfully entitled to, shall as to such creditors, purchasers, or other persons, their representatives or assigns, be void.'' This is an old statute, being first enacted by the General Assembly of Virginia in 1785 and copied by this state from the code of that state. It will be noted that the terms defining the class of persons as to whom gifts and fraudulent conveyances etc. are void, are broad and comprehensive. It uses the words, creditors, purchasers and *other persons,* and defines their claims as ''what they are or may be lawfully entitled to.'' But for many years thereafter, and prior to the enactment of section 2 of chapter 133 of our Code, which appears first to have

become the law of Virginia on the adoption of the Revised Code of 1849, as section 2 of chapter 179, a creditor at large could not maintain a suit in equity to avoid a fraudulent transfer or charge upon his debtor's land. It was necessary for him to reduce his demand to judgment or decree, before he could maintain such a suit. *Chamberlayne* v. *Temple*, 2 Rand. 384, and *Tate* v. *Liggett*, 2 Leigh 84. But this later statute dispenses with that necessity and allows him to bring his suit without waiting to get a judgment at law, provided he then has a right to demand payment of his debt or claim. *Tuft* v. *Pickering*, 28 W. Va. 330. If he is successful in having the conveyance avoided, the statute gives him a lien upon the land for his debt from the commencement of his suit. *Guggenheimer* v. *Lockridge*, 39 W. Va. 457. The statute also expressly provides that, in such suit he shall have all relief in respect to said estate that he would be entitled to after obtaining a judgment or decree for a claim. It is, therefore, competent for a court of equity to ascertain and decree the amount of a purely legal demand, which becomes a lien on the property fraudulently conveyed, and subject it to the satisfaction of such decree, provided only that the claim is payable at the institution of the suit. *Frye* v. *Miley*, 54 W. Va. 324. The evident purpose of section 2, chapter 133, Barnes' Code, was to give to that class of persons, as to whom a gift or fraudulent transfer of property by a debtor is made void, a more speedy remedy, and the term "creditor", as therein employed, includes any person who has, at the time of such gift or fraudulent conveyance, a valid claim or demand against such fraudulent grantor, founded on contract. Hogg, in his work on Equity Principles, Sec. 183, says: "Under this statute any creditor at large of the fraudulent debtor, without respect to the form or character of the debt, may maintain a suit to set aside a conveyance as fraudulent as to him, even though the claim be an unliquidated one founded upon no certainty as to the amount of the damages claimed." In *Burton* v. *Mills et al.*, 78 Va. 468, this identical statute was held to include a person having a right of action for breach of marriage promise; and in *Carr*

v. *Davis,* 64 W. Va. 522, this court decided that a surety or bail on a criminal recognizance, against whom an execution on the recognizance had been awarded, although it appeared he was indemnified against loss or damage on account of his suretyship, could maintain a bill in equity to avoid a fraudulent conveyance made by his indemnitor, without first paying the recognizance debt. Point 3 of the syllabus in that case defines the term creditor within the meaning of chapter 74 of our Code, as: "Any one who, but for a deed made to defraud creditors, would have right to subject the property to his demand." See also *Harris* v. *Harris,* 23 Grat. 37, and 20 Cyc. 430. Our conclusion is that plaintiffs had a right to bring this suit in equity to avoid the conveyances as to their claim, even though it was one for unliquidated damages growing out of an alleged breach of contract, and the chancellor in such proceedings could ascertain and decree the amount to which they were entitled and enforce the same against the land. Of course, if plaintiffs were not successful in establishing the alleged fraud, their entire suit would fail. Jurisdiction in equity is based on the ground of fraud, a well recognized ground of equity jurisdiction. That plaintiffs' claim is one for unliquidated damages does not deny equity jurisdiction for the fraud, but the ascertainment of the damages becomes an incidental matter in the course of administering complete relief. In fact since the enactment of Sec. 2, Ch. 133, most suits of this character are brought on demands which are purely legal, but equity, having jurisdiction because of the fraud, grants complete relief when the fraud is proven. It can not be said that defendant is improperly denied the right of trial by jury. Equity jurisdiction on the ground of fraud is an ancient one, older than the constitution, and, therefore, Sec. 2, Ch. 133, does not deny defendant the right of trial by jury by conferring on a court of equity a jurisdiction which it did not have when the constitution was adopted. Moreover, defendant has brought about the situation by his own voluntary and fraudulent act and has no right to complain. *Chewvront* v. *Horner,* 62 W. Va. 476; *Cecil* v. *Clark,* 44 W. Va. 659; and *Broderick* v. *Broderick,* 28 W. Va. 378.

W. R. Scott lived with his father. His testimony was not taken. Neither the terms of the alleged agreement between him and his father, nor the amount of money furnished by him on the purchase price of the land is proven. Neither is it shown what his father paid for the land. The court was justified in reaching the conclusion that the conveyance to him was a gift. It was made the 1st day of January, 1916, after the contract between plaintiffs and his father was made. Plaintiffs were, therefore, creditors of Scott at the time he made the conveyance within the meaning of Sec. 1, Ch. 74, Code. The contract was a subsisting one at the date of the gift, although plaintiffs' right to demand damages for its breach may not then have accrued. The burden was on W. R. Scott to prove that he paid a valuable consideration for the land, and he made no attempt to do so. Being voluntary, the conveyance was void for that reason, whether or not the grantee had knowledge of the grantor's fraudulent intent, and, being prior creditors and having brought their suit within five years after the conveyance, plaintiffs properly prevailed. What is said respecting the conveyance to the son applies with equal force to the conveyance from the son to his mother. Moreover, she was a *pendente lite* purchaser, and hence could not acquire rights which would defeat any proper decree against the parties to the first conveyance.

Respecting the terms of the agreement the testimony is conflicting. Plaintiffs both swear the contract covered the sawing of all the timber on defendant's land, a tract of about 67 acres. It was impracticable to saw it all at one set, the timber being situated on both sides of a ridge. Defendant was to cut the timber and put the logs on the skidway at the mill. Before all the timber was cut a controversy arose as to who should move the mill to the second set, and the matter was referred to Mr. George Smith, who was the witness to the oral contract. He says nothing was said in his presence by the parties in regard to the matter. That defendant sold a part of the standing timber, not accessible to the mill at the first set, to another man and thereby put it out of his power to comply with the contract, if it embraced the sawing of all his timber, (and the weight of the testimony is to that

effect), is not denied. Defendant does deny, however, that he agreed to move the mill.

Plaintiffs' testimony respecting their damages is very general and indefinite. They both estimate their damage at $782.50, made up of the following items: Loss of ties, about $225; moving the mill, $60; loss occasioned by defendant's refusal to permit them to saw all his timber, $197.50; and loss of profits they would have made on sawing timber for others at the same set, $300. The circuit court decreed them only $156.00 of that amount. Just how it arrived at that sum does not appear from the decree, nor are we able to determine from the evidence. It does not appear which items the chancellor allowed or that he rejected all of any one of them. If we assume he found that it was defendant's duty to move the mill, there is no testimony respecting the cost of moving it. Plaintiffs moved it themselves onto the lands of one Bruffey, near defendant's line, where they claim the agreement provided the second set was to be, because there was not sufficient water on defendant's land. But neither of them undertakes to say what it cost or how long it took them to move it. Therefore, this item should be excluded for want of evidence to prove it. Defendant did not guarantee to plaintiffs that other people would furnish them timber to be sawed. The matter of sawing for others was talked over at the time the contract was made and defendant simply gave permission to plaintiffs to saw timber for his neighbors and stated that all of them, except one Blake, might haul their timber to the mill across his land. But he is not responsible for any loss to plaintiffs on this account. It was merely a matter of inducement and no part of his undertaking. Neither does the evidence support the claims for $225 for ties lost and $197.50 for not allowing plaintiffs to saw all of defendant's timber. Their figures are made up from general statements alleged to have been made to plaintiffs by defendant concerning the estimated quantity of lumber and ties on the land, before the contract of sawing was entered into, and are denied by defendant. Plaintiffs went over the land shortly before and examined the timber with a view of buying it, but not agreeing on the price, they later contracted to saw it. They evi-

294 KINNISON v. SCOTT. [April 1918.

dently had as good an opportunity as defendant to estimate the quantity of timber. It is shown by the testimony of G. M. Williams, who, at the instance of defendant, went over that part of the tract on which the timber was left standing when plaintiffs ceased to saw, that only 54,000 feet of timber and 25 railroad ties had been left. At that time most of the timber had been severed and cut into logs by the man to whom defendant had sold it, and Williams says he scaled the logs and found they contained 44,400 feet, and made a careful estimate of the standing timber by counting each tree, and estimating the number and size of logs in each, and found it would not exceed 10,000 feet. He was a man of some fifteen or twenty years experience in the sawmill and lumber business. His testimony is the only definite and reliable evidence to prove the quantity of timber and ties not sawed. W. K. Good testified it cost them $2.00 per M. to saw the timber, thus showing the profit plaintiffs would have made on each M. feet sawed to be $1.50, and he says the cost of sawing ties was 8c and the cost of hauling them to the railroad, which was about six miles away, 15c, and that they were worth, delivered at the railroad, 50c to 55c. Hence their loss per tie was not over 17c, or $4.25 for the 25 ties; and the loss of profits on sawing the timber $1.50 per M., as they were to receive $3.50 per M. for sawing, or $81.00, thus making their loss or damage, altogether only $85.25. This is as much as the evidence shows plaintiffs were justly entitled to recover. The decree will be corrected to this amount as of the date of its rendition, and as thus corrected will be affirmed. The correction in favor of appellant being less than the jurisdictional amount in this court, appellees have substantially prevailed and are, therefore, entitled to their costs. *Wallace* v. *Leroy,* 57 W. Va. 263.

*Modified and affirmed.*