# CHARLESTON.

## G. D. THOMAS *v.* B. M. LUPIS *et al.*

### Submitted March 4, 1924.   Decided March 25, 1924.

1. FRAUDULENT CONVEYANCES.—*One Having Right to Recover for Tort Held "Creditor," Within Statute; Tort Claim Need Not be Put in Judgment.*

   Section 1, chapter 74, Barnes' Code, 1918, which provides that every gift, conveyance, assignment, or transfer or charge upon any estate, real or personal, with intent to delay, hinder or defraud creditors, purchasers or other persons, of or from what they are or may be lawfully entitled to, shall as to such creditors, purchasers or other persons, their representatives or assigns, be void, applies to one who has a right to recover damages for a tort; and one so entitled may maintain a suit to set aside a deed so made, without having his claim reduced to judgment.   (p. 105).

2. LIS PENDENS.—*Object of Notice of Lis Pendens Stated.*

   The object of a notice of lis pendens is to warn persons from acquiring interests in the property affected by the litigation, but the notice itself creates no lien on the property. (p. 107).

3. SAME.—*Notice Held to Show Claim for Tort, and Not for Judgment.*

   The notice in the instant case, properly interpreted, shows that plaintiff's claim is one for damages for a tort, not for a judgment.   (p. 106)

4.    SAME.—*Original Notice of Lis Pendens for Tort Held Binding
      on Subsequent Purchaser.*

> Plaintiff in an action at law obtains a verdict for damages
> for a tort; pending a motion of defendant for a new trial,
> plaintiff institutes a suit in chancery to set aside certain
> deeds, alleging they were fraudulently made to prevent him
> from subjecting the property covered by the deeds to the
> payment of his damages, as ascertained by the jury in its
> verdict, and records a notice of his lis pendens in the clerk's
> office of the county court of the county wherein the property
> is located. Judgment is entered on the verdict, but this is
> reversed on writ of error, the verdict set aside and new trial
> awarded. Upon a retrial a judgment is obtained for a less
> amount than was obtained on the former trial. Plaintiff then
> files an amended bill stating these facts. The second judg-
> ment when proved in the cause measures the amount of dam-
> ages which may be recovered in the chancery suit; and the
> original notice of lis pendens so recorded will bind one who
> purchases the property subsequent to the recording of the
> notice, whether he has actual notice of the pendency of the
> chancery suit or not. (p. 107).

McGINNIS, JUDGE, absent.

Appeal from Circuit Court, McDowell County.

Action by G. D. Thomas against B. M. Lupis and others.
From a decree for plaintiff, certain defendants appeal.

*Modified and affirmed.*

*Taylor & Taylor, W. L. Taylor* and *Crockett & Sanders,*
for appellants.

*Strother, Sale, Curd & Tucker,* for appellee.

MEREDITH, PRESIDENT:

The circuit court of McDowell County on April 7, 1923,
entered a decree in favor of the plaintiff against the defend-
ant B. M. Lupis for $2004.94 and costs; by the same decree
certain deeds hereinafter mentioned were set aside as fraudu-
lent, insofar as the plaintiff's claim was concerned, and the
land ordered sold; the decree was modified by a subsequent
decree entered April 28, 1923. From both of these decrees
the defendant, M. S. Taylor, Trustee, Vincenzio Stazione,

Teresa Stazione, Carmela Ialungo Ciafardini and John Ciafardini, appeal.

The controversy arises out of an automobile accident. The plaintiff, Thomas, was seriously injured, as he claimed and as the jury later found, by the negligence of defendant, B. M. Lupis, in operating his motor car. This occurred June 7, 1919. At that time Lupis was the owner of a house and lot in Welch. Being fearful that Thomas might sue him, on June 18th he conveyed his property, and that was all the real estate he had, to defendant "M. S. Taylor, Trustee"; who two days later conveyed the property to Pauline I. Lupis, wife of B. M. Lupis. The consideration stated in each deed is "One dollar and other valuable considerations paid", though as a matter of fact there was no consideration paid in either case. On July 10, 1919, Thomas brought an action at law against B. M. Lupis to recover damages for his injuries, and on February 19, 1920, obtained a verdict for $8,000, on which judgment was entered March 20, 1920.

On March 4, 1920; while a motion to set aside the verdict was pending and before the judgment was entered, plaintiff brought this suit against the two Lupises and Taylor, as Trustee, to set aside the two deeds mentioned, charging that they were made to defraud him out of his claim for his injuries; the bill states that he had recovered a verdict therefor for $8000, but does not show that it had been carried into judgment, though the bill was filed at April Rules, 1920, after the judgment was entered; however, he does ask that the deeds be set aside and the property be sold to satisfy his "said judgment." On the day this suit was instituted plaintiff filed the following notice in the county clerk's office:

"NOTICE OF LIS PENDENS.

G. D. Thomas
    vs.      In Chancery.
B. M. Lupis and Pauline I. Lupis,
his wife, and M. S. Taylor, Trustee.

Pending in the circuit court of McDowell County, West Virginia.

The object of the above entitled suit is to obtain a

decree in favor of G. D. Thomas against the said B. M. Lupis, for this to-wit:

That on or about said 7th day of June, 1919, the said B. M. Lupis negligently caused a serious injury to the said G. D. Thomas in an automobile collision in which the said B. M. Lupis was negligently driving his car, which negligently caused said injury, that thereafter on the 18th day of June, 1919, when the said B. M. Lupis had been sued by the said G. D. Thomas, or knew that he was about to be sued by him on account of said injury he fraudulently and for the purpose of evading the payment of any damages that might be recovered by the said Thomas against him and without adequate consideration conveyed Lot No. 6 in Block No. 6 in Woodmont Addition to the Town of Welch, McDowell County, West Virginia to M. S. Taylor, Trustee, for the purpose of having the said M. S. Taylor, Trustee, to fraudulently convey the same to the wife of said B. M. Lupis, Pauline I. Lupis, and accordingly on the 20th day of June, 1919, the said M. S. Taylor, Trustee, fraudulently and without adequate consideration conveyed the said property to the wife of the said B. M. Lupis, Pauline I. Lupis.

At the February, 1920, term of this court the jury upon the trial of the law case against said B. M. Lupis in favor of G. D. Thomas in reference to said injuries gave the said Thomas a verdict against the said B. M. Lupis in the sum of $8000.00, and the said Thomas is advised that the said Lupis and his said wife are about to make another transfer of said property in order to evade the payment of said damages. The object, therefore, of this suit is to set aside said fraudulent deeds for such said Lot No. 6 in Block No. 6 in Woodmont Addition to the Town of Welch and subject it to the payment of said damages, and to sell said real estate in satisfaction thereof, which contains as nearly as can be ascertained about one-eighth of an acre and is more particularly described on a map of said Woodmont Addition of record in Deed Book 32 on page 318 in the office of the Clerk of the County Court of McDowell County, West Virginia.

The name of the party or person whose estate in said land is intended to be affected by the foregoing suit is B. M. Lupis and Pauline I. Lupis.

G. D. Thomas.

By Counsel."

A writ of error was awarded to the $8000 judgment, May 12, 1920, and on February 22, 1921, the judgment was reversed and a new trial awarded defendant Lupis. Before a retrial of the action could be had, Pauline I. Lupis and her husband, on April 9, 1921, conveyed the property to defendant Carmela Ialungo Ciafardini, who, with her husband, on July 8, 1921, conveyed it to defendants Vincenzio Stazione and Teresa Stazione for $7000 cash. The action at law was retried in September following and on September 22, 1921, plaintiff recovered a judgment for $2000 and costs. He then filed an amended bill stating that the $8000 judgment had been reversed, a new judgment for $2000 had been recovered in the action at law upon which plaintiff had been paid $263.00 by McDowell County National Bank, garnishee; that the deed to Pauline I. Lupis is void because the deed from B. M. Lupis to Taylor, Trustee, did not reveal the beneficiaries for whom Taylor was acting and that Taylor had no authority to convey the property. The amended bill asks that the deeds mentioned in the original bill be held void and the property sold to satisfy the judgment.

B. M. Lupis answered the bill, denying its material averments; Taylor, Trustee, answered, denying that he had made the deed to Mrs. Lupis for the purpose of aiding B. M. Lupis in delaying or defrauding his creditors. Before the decree of April 7, 1923, was entered, the Staziones and Ciafardinis filed their separate petitions, asking to be made parties, and stating that they had purchased the property in good faith; that the Staziones still own the property; that they paid $7000 therefor without any knowledge of the suit or that their rights would be affected thereby, as they relied upon the representations of certain attorneys who prepared an abstract of title and recommended the title to be free of liens or encumbrances.

By the first decree the court held all the deeds void insofar as plaintiff's claim was affected; that M. S. Taylor, Trustee, had no authority to convey the property to Mrs. Lupis, and that his deed to her passed no title, and therefore no title passed to her successors. By the second decree the first decree was corrected insofar as it attempted to adjudicate the title other than to subject the property to the payment of

plaintiff's debt; but that although Taylor, Trustee, had no authority to convey and his deed did not pass the legal title, the various deeds did pass the equitable title to the Staziones.

The effect of the decree is to subject the land to the payment of plaintiff's claim, now reduced to judgment, giving the plaintiff priority in right over the Staziones, purchasers, as they allege, for value and without notice.

While a number of questions are raised by counsel for appellants, we think there are but three that merit consideration. They insist that the demurrer to the bill and amended bills should have been sustained, yet nothing is pointed out. Though inaptly drawn, we think them sufficient.

The first question is whether the plaintiff at the time this chancery suit was instituted was a "creditor" within the meaning of our statute relating to fraudulent conveyances, sec. 1, ch. 74, Barnes' Code, 1918. On March 4, 1920, he had a verdict for $8000, but no judgment; that was the date this suit was begun. But he had a claim against Lupis for $8000; he had this claim before verdict; after verdict but before judgment his claim was certainly as valid a claim as before verdict. It seems not to have been definitely decided in this state whether a demand for tort is sufficient to make one a creditor under the statute cited, entitling him to sue to have a conveyance set aside for fraud, though in *Scraggs* v. *Hill,* 43 W. Va. 162, 27 S. E. 310, in a concurring note, Judge BRANNON says that is enough. The statute makes the conveyance void as to "creditors, purchasers or other persons" if it was made with intent to delay, hinder or defraud them "of or from what they are or may be lawfully entitled to." If plaintiff was not strictly a creditor, he was in the class of "other persons" and therefore within the terms of the statute. It was clearly settled in *Greer* v. *Wright,* 6 Grat. (Va.) 154, a decision binding on us. This is supported by a long line of authorities, among them: *Johnson, Trustee* v. *Wagner,* 76 Va. 587; *Scott* v. *Hartman,* 26 N. J. Eq. 89; *Bongard* v. *Block,* 81 Ill. 186; 25 Am. Rep. 276; *Foote* v. *Cobb,* 18 Ala. 585; *Corder* v. *Williams,* 40 Ia. 582; *Kinnison* v. *Scott,* 82 W. Va. 287, 95 S. E. 952; *Bump, Fraudulent Conveyances,* Sec. 503; 27 C. J. p. 476, and cases cited.

The second point urged is that the "notice of lis pendens" quoted above in full is not sufficient to bind the property in the hands of the| Staziones who claim to be bona fide purchasers for value and without any actual notice of the pending suit. Of course, the "lis pendens" or "pending suit" here referred to means the pending chancery suit, the very suit in which the notice was filed; that was the suit of which warning was given to prospective purchasers of the real estate. Defendants' counsel urge that in this notice plaintiff bases his demands upon a "judgment" for $8000; they say "upon examination of this lis pendens, it will be seen that the suit instituted was only for the purpose of enforcing a specific lien passed upon a judgment against B· M. Lupis for $8000," but they are in error there. The chancery suit was instituted to recover damages, to set aside the deeds and to sell the property to satisfy whatever amount of damages should be ascertained in that suit. It was not based upon any judgment. The claim is not described in the notice as a judgment. While by way of description or measure of the damages claimed it does say that the jury had returned a verdict in plaintiff's favor for $8000, the only effect of that is to show the amount claimed; it does not change the claim from one for "damages" to one for a "judgment."

Defendant's counsel argue this point as though this "notice of lis pendens" were filed under sections 14 and 15, chapter 139, Barnes' Code, 1923, (Acts 1921, ch. 64); on the contrary, it was filed under· sec. 13, ch. 139, Barnes' Code, 1918. The legislature materially amended the law as to notice of lis pendens by the statute referred to, but that was a year after the notice was filed and this suit was begun. The amendment only applies to suits and proceedings thereafter begun; so this case is to be determined according to the law in force when the suit was instituted. Section 13, chapter 139, Barnes' Code, 1918, then provided:

> "The pendency of an action, suit, attachment or proceedings to subject real estate to the payment of any debt or liability, upon which a previous lien shall not have been acquired in some one or more of the methods prescribed by law, shall not bind or affect a purchaser of such real estate, for a valuable considera-

tion, without notice, unless and until a memorandum, setting forth the title of the cause; the court in which it is pending; the general object of the suit, attachment or other proceeding, the location and quantity of the land, as near as may be,' and the name of the person whose estate therein is intended to be affected by the action, suit, attachment or proceeding, shall be filed with the clerk of the county court of the county in which the land is situated. The clerk of every such county court shall without delay record the said memorandum in the deed book, and index the same in the name of both the parties.''

. In the brief of appellants' counsel it is stated: ''It will not be denied that the only possible right which the plaintiff had for filing the lis pendens, or for instituting the suit, was by virtue of a specific lien against defendant Lupis, and it appears from the purported amended bill filed in this case that the lien finally enforced by the decree of the court is not the lien upon which the suit in chancery and the lis pendens was predicated.'' This statement is on the theory that plaintiff's claim was based on a judgment, not merely for damages, and that since the original $8000 judgment was reversed, the notice of lis pendens fell with it; that the second judgment, the one for $2000, did not revive plaintiff's rights under the notice and therefore both failed. But as already stated, plaintiff's claim was one for damages only; plaintiff's right was not reduced to judgment when the suit was begun, but he could have brought this suit had no action at law been instituted. He had no specific lien, but he did not need any. By suing in equity to set aside the deeds for fraud and to satisfy his claim for damages he acquired a lien under chapter 74, Code, and the object of the notice of this suit was to warn prospective purchasers of that lien or charge on the property. The filing of his notice of lis pendens did not create the lien; that was not its object, but to give warning. The bringing of his equity suit brought his lien into being; of that these defendants were given notice. They were purchasers pendente lite, and so are as conclusively bound by the result of the litigation as if they had been parties to the suit from the beginning. *O'Connor*

v. *O'Connor,* 45 W. Va. 354, 32 S. E. 276. They can not now be heard to say that they had no actual notice.

The third point is that the Ciafardinis and Staziones were not made parties by amendment to the bill after they filed their petitions showing they had purchased the property, and their rights were adjudicated without proper pleadings. They were not necessary parties. Insofar as plaintiff's claim was decreed, they were bound whether they were parties or not. It appears that after the judgment for $2000 was entered, the Lupises left for Italy. The Staziones want to know what kind of title they have as between them and the Lupises; doubtless their reason is to determine whether they will pay off the claim of the plaintiff. They want to know whether they will have good title in case they do pay. By the first decree the court adjudged that they got no title at all; that because Taylor, Trustee, was not authorized to convey, he could not convey and therefore did not convey any title to Mrs. Lupis; that it necessarily followed that she could not convey any title, since she had none, and consequently her successors, the Staziones, obtained none. By the second decree it was adjudged that the Staziones got the equitable title only, subject to plaintiff's claim. We need not and do not decide that question. The legal as well as the equitable title can be sold in this proceeding, as they are both before the court; the purchaser would acquire both.

One question remains. The court decreed the amount of plaintiff's recovery to be $2004.94, ignoring plaintiff's admission in his amended bill that he had been paid $263 by McDowell County National Bank as garnishee. Just when this was paid does not appear, but certainly a year after the judgment for $2000 was recovered. Making due allowance for interest and $81.15 for costs, and giving Lupis the benefit of this payment, there would be owing to plaintiff on April 7, 1923, the date of the decree, the sum of $2003.49, with interest thereon until paid, and the decree will be corrected in that respect; but as the defendants made no motion in the circuit court to make the correction, as they might have done, they will not be allowed their costs in this court.

The decree so modified will be affirmed.

*Modified and affirmed.*